1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   LUIS SALAZAR,                    Case No. CV 16-6721 (SS)

12              Plaintiff,

13        v.

14   NANCY A. BERRYHILL,[1] Acting     **MEMORANDUM DECISION AND ORDER**
     Commissioner of Social
15   Security,

16              Defendant.

17   _____

18                              **I.**

19                         **INTRODUCTION**

20

21        Luis Salazar ("Plaintiff") brings this action seeking to

22   overturn the decision of the Commissioner of the Social Security

23   Administration (the "Commissioner" or "Agency") denying his

24   application for Supplemental Security Income ("SSI") benefits.  The

25   parties consented, pursuant to 28 U.S.C. § 636(c), to the

26   _____

27   [1]  Nancy A. Berryhill is now the Acting Commissioner of Social
     Security and is substituted for Acting Commissioner Carolyn W.
     Colvin in this case.  See 42 U.S.C. § 405(g); Fed. R. Civ. P.
28   25(d).

jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 16, 2013. (AR 134-39). Plaintiff alleged a disability onset date of November 19, 2005. (AR 118). The Agency denied Plaintiff's application on October 3, 2013. (AR 59-67). On October 10, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 71). On December 29, 2014, ALJ David G. Marcus conducted a hearing to review Plaintiff's claim. (AR 39-58). On January 29, 2015, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 28-35). Plaintiff sought review of the ALJ's decision before the Appeals Council on March 16, 2015. (AR 22). On June 29, 2016, the Appeals Council denied review. (AR 8-10). The ALJ's decision then became the final decision of the Commissioner. (AR 8). Plaintiff commenced the instant action on September 7, 2016. (Dkt. No. 1).

## III.

### FACTUAL BACKGROUND

Plaintiff was born on March 9, 1965. (AR 134). He was 40 years old as of the alleged disability onset date of November 19,

2005, and 49 years old when he testified before the ALJ.  (AR 39, 134).  Plaintiff previously worked as a security guard and mover/driver.  (AR 46, 34).  Plaintiff alleges disability due to lower back injury/screws in back, low blood count, stomach surgery for holes in esophagus, and depression.  (AR 59, 161).

## A.   Plaintiff's Testimony And Statements

Plaintiff testified that he worked as a mover and driver for approximately five years beginning in 2001.  (AR 46, 161-62).  In 1999 and 2000, Plaintiff worked as a security guard at a homeless shelter.  (AR 46-47, 162).  Plaintiff has not worked since he filed his application for SSI benefits in May 2013.  (AR 48).

Plaintiff had prior back surgeries in February 2009 and February 2010.  (AR 164).  Plaintiff testified that there is a "ball" in the lumbar area of his back at the location of his past surgeries that "hurts" and does "not feel right."  (AR 51-52). This pain prevents him from laying on his bed and leaning over. (AR 52).  Plaintiff testified that he "can't do anything."  (Id.).

Plaintiff reports that his condition has worsened since his initial application for SSI benefits.  (AR 170).  Plaintiff testified that, due to his back pain and other limitations, he can lift only ten to fifteen pounds, stand for three to four hours out of an eight-hour work day, and walk for about eight hours out of an eight-hour work day.  (AR 53-55).

Plaintiff testified that the only medical care he is receiving is for treatment of his back. (AR 50). The last time Plaintiff saw a doctor for his back symptoms was in March 2013.[2] (Id.). Plaintiff has not seen a doctor since that time "because they cut me off of my workman's comp . . . [, i.e.,] being covered." (AR 51). Plaintiff testified that the only medications he takes are over-the-counter Ibuprofen and Tylenol. (Id.).

**B.   Physicians' Opinions**

**1.   Worker's Compensation Physician Simon Lavi, D.O.**

Simon Lavi, D.O., was Plaintiff's original worker's compensation physician. (AR 31). Dr. Lavi treated Plaintiff for ongoing symptoms associated with retained symptomatic lumbar spine hardware and status post L4 to S1 bilateral transforaminal lumbar interbody fusion. (AR 258; see also AR 50). Dr. Lavi's physical examination on October 18, 2013, revealed tenderness from the mid to distal lumbar segment of Plaintiff's spine. (AR 257). Dr. Lavi reported pain with terminal motion and a positive seated nerve root test with dysesthesia at the L5-S1 dermatome. (Id.). Dr. Lavi's treatment plan included obtaining updated magnetic resonance imaging of Plaintiff's lumbar spine and bilateral lower extremities and ordering an electromyogram study to assess Plaintiff's radicular symptoms. (AR 258).

---

[2] Plaintiff's medical records indicate that he last saw a physician in October, not March, 2013. (AR 256-60).

1

**2. Consultative Examining Physician Conception A. Enriquez, M.D.**

On September 11, 2013, Plaintiff was examined by Conception A. Enriquez, M.D., a consultative examining internist. (AR 244-47). Dr. Enriquez noted that Plaintiff presented for treatment for a history of peptic ulcer disease and back pain. (AR 244). Dr. Enriquez reported that Plaintiff drove himself to his appointment. (AR 245).

Dr. Enriquez's physical examination of Plaintiff's spine revealed that his cervical spine range of motion was within normal limits with no tenderness or muscle spasm. (AR 246). While there was tenderness in Plaintiff's lumbosacral spine with decreased range of motion at 70/90 degrees on trunk flexion, there was no tenderness to palpation or muscle spasm in that area. (Id.). Plaintiff's straight leg raising test was positive at 70 degrees. (Id.).

Dr. Enriquez reported that Plaintiff's gait and balance are within normal limits and Plaintiff does not require an assistive device for ambulation. (AR 247). Using the Jamar dynamometer, Dr. Enriquez noted that Plaintiff is able to generate 80 pounds of force using his right hand and 90 pounds of force using his left hand. (AR 245). The remaining portions of Dr. Enriquez's examination of Plaintiff were unremarkable. (AR 244-47).

Dr. Enriquez's medical impressions were that Plaintiff's back revealed tenderness and decreased range of motion in the lumbosacral spine area with signs of radiculopathy. (AR 247). As a functional assessment, the doctor opined that Plaintiff can occasionally lift or carry twenty pounds and frequently lift and/or carry ten pounds, stand and/or work with normal breaks for six hours in an eight-hour work day, sit with normal breaks for six hours in an eight-hour work day, and occasionally bend, stoop, and twist. (Id.).

### 3. Consultative Examining Physician Richard Pollis, M.D.

On August 7, 2014, Plaintiff underwent a consultative orthopedic examination by Richard Pollis, M.D. (AR 666-71). Dr. Pollis reported that Plaintiff's gait was "normal without signs of limp or antalgia." (AR 668). Dr. Pollis further noted that Plaintiff is able to stand on his heels and toes without difficulty and no evidence of weakness in the ankle flexors and extensors. (Id.). Further, Plaintiff has no difficulty getting on and off of the examination table, sat in a chair comfortably without tilt, is able to rise from a sitting and supine position, and requires no assistive devices to ambulate. (Id.).

Dr. Pollis's examination of Plaintiff's spine revealed paravertebral muscle tenderness and spasm, forward flexion to 70 degrees, extension to zero degrees, right and left lateral flexion to fifteen degrees, and straight leg raise test to 80 degrees bilaterally with hamstring spasm. (Id.). The Jamar dynamometer

measured Plaintiff's grip strength at 80/70/80 in both hands. (AR 667). The remaining portions of Dr. Pollis's examination of Plaintiff were unremarkable. (AR 666-71).

Dr. Pollis diagnosed Plaintiff with "[l]ower back pain, status post lumbar laminectomy and fusion." (AR 670). In his medical source statement, Dr. Pollis opined that Plaintiff is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six hours out of an eight-hour work day with appropriate breaks, and sitting six hours out of an eight-hour work day with appropriate breaks. (Id.). Dr. Pollis further assessed the limitation of occasional bending, climbing, stooping, kneeling, and crouching. (AR 670-71).

**4.    State Agency Reviewing Physician L. Limos, M.D.**

On October 2, 2013, L. Limos, M.D., concluded that Plaintiff has a severe back condition that does not medically meet or equal a listed impairment. (AR 59-67; see also AR 33). Dr. Limos opined that Plaintiff retains the ability to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours in an eight-hour work day, sit six hours in an eight-hour work day, and occasionally perform postural functions. (AR 64; see also AR 33).

**5.  Worker's Compensation Examiner Jeffrey A. Berman, M.D.**

The Agreed Medical Examiner in Plaintiff's Worker's Compensation case Jeffrey A. Berman, M.D., examined Plaintiff on October 15, 2009.  (AR 424).  Dr. Berman's physical examination of Plaintiff's lumbar spine revealed tenderness around and to the sides of Plaintiff's scar and a "needle" sensation reported by Plaintiff upon palpation.  (AR 427).  Further, Plaintiff reported pain in the lower back with lumbar mobility, mainly with flexion and extension.  (Id.).  Dr. Berman noted a slightly diminished ability to perform sitting straight leg raise with stiffness in the lower back and lower back complaints.  (Id.).  In addition, the doctor reported that Plaintiff is unable to sit and forward flex to reach his fingertips to his toes.  (Id.).  In a supine position the doctor noted that a straight right leg raise elicits a non-radiating lower back pain, while a straight left leg raise elicits lower back pain and some radiation.  (Id.).

Dr. Berman reported that Plaintiff's x-rays of his lumbar spine show evidence of a decompression as well as screw fixations and fusions.  (AR 429).  Dr. Berman's remaining findings were unremarkable.  (AR 424-36).

Dr. Berman concluded that, as of October 2009, Plaintiff was "permanent and stationary, having reached maximum medical improvement."  (AR 431).  Due to Plaintiff's limited mobility and resulting pain, as well as the "hint" of left side radiculopathy in response to straight leg raising and left calf atrophy

consistent with chronic radicular involvement, Plaintiff is "precluded from substantial activities, along with prolonged weight bearing activities." (AR 432).

Based upon these findings, Dr. Berman initially assessed Plaintiff with a 28 percent "whole person impairment." (Id.). Due to Plaintiff's additional weight-bearing limitation, however, Dr. Berman assessed an additional nine percent impairment, for a total orthopedic impairment of 34 percent. (AR 433-34). Dr. Berman opined that Plaintiff's weight-bearing limitation would cause him to fall into a category of persons able to rise to a standing position and walk but having difficulty with elevations, grade, stairs, deep chairs, and long distances. (AR 433).

## IV.

## THE FIVE STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)    Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)    Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)    Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.

<u>Bustamante</u>, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  <u>Id.</u> at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 35).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2013, which is the date Plaintiff filed his application for SSI benefits.  (AR 30).  At step two, the ALJ found

11

that Plaintiff had the severe medically determinable impairments of status posterior fusion with pedicle screw fixation (L4-5 and L5-S1) and interbody fusions and obesity. (Id.). At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment. (AR 31).

At step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour work day, sit six hours in an eight-hour work day, and occasionally bend, climb, stoop, kneel, and crouch. (AR 32). The ALJ found that Plaintiff was capable of performing his past relevant work as a security guard. (AR 34). The ALJ determined that this past work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Id.). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since Plaintiff filed his application for SSI benefits on May 16, 2013. (AR 35).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d

1033, 1035 (9th Cir. 2001) (citing _Tackett_, 180 F.3d at 1097); _see also_ _Smolen v. Chater_, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing _Fair v. Bowen_, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." _Reddick_, 157 F.3d at 720 (citing _Jamerson v. Chater_, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (_Id._). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" _Aukland_, 257 F.3d at 1035 (quoting _Penny v. Sullivan_, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. _Reddick_, 157 F.3d at 720-21 (citing _Flaten v. Sec'y of Health & Human Servs._, 44 F.3d 1453, 1457 (9th Cir. 1995)).

//

//

//

//

//

//

//

**The ALJ's Reasons For Rejecting Plaintiff's Credibility Were Clear And Convincing**

Plaintiff alleges that the ALJ improperly assessed Plaintiff's credibility. (Pl's Mem. in Support of Complaint at 3). The Court disagrees. The ALJ's reasons for rejecting Plaintiff's credibility were supported by substantial evidence in the record and were clear and convincing. Accordingly, for the reasons discussed below, the ALJ's decision is AFFIRMED.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Initially, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citation omitted). If such evidence exists, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted). In so doing, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such
> as the claimant's reputation for lying, prior
> inconsistent statements concerning the symptoms, and
> other testimony by the claimant that appears less than

candid; (2) unexplained or inadequately explained
failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily
activities.

Smolen, 80 F.3d at 1284; see also Tommasetti v. Astrue, 533 F.3d
1035, 1039 (9th Cir. 2008).

An AlJ also may rely upon inconsistencies between a claimant's
testimony and conduct, or internal contradictions in the claimant's
testimony. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.
1997). In addition, the ALJ may consider the observations of
treating and examining physicians regarding, among other matters,
the functional restrictions caused by a claimant's symptoms.
Smolen, 80 F.3d at 1284 (citing Social Security Ruling ("SSR") 88-
13). However, it is improper for an ALJ to reject subjective
testimony based "solely" on its inconsistencies with the objective
medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin.,
554 F.3d 1219, 1227 (9th Cir. 2009) (citing Bunnell v. Sullivan,
947 F.2d 341, 345 (9th Cir. 1991)).

Regardless of the reason, the ALJ's credibility determination
must be supported with findings that are "sufficiently specific to
permit the court to conclude that the ALJ did not arbitrarily
discredit [the claimant's] testimony." Tommasetti, 533 F.3d at
1039 (citation omitted). Although an ALJ's interpretation of a
claimant's testimony may not be the only reasonable one, if it is
supported by substantial evidence, "it is not [the court's] role

15

to second-guess it." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (citing <u>Fair</u>, 885 F.2d at 604).

Here, Plaintiff testified to suffering from "unbearable," stabbing pain in his lower back that limits his ability to stand and requires him to lay down for much of the day. (AR 51-52; <u>see also</u> AR 32). Due to this pain, Plaintiff testified that he can lift only up to ten or fifteen pounds bilaterally, stand for one hour at a time before he begins to feel pain, stand a total of three or four hours, and walk for eight hours a day. (AR 53-55).

The ALJ relied on the following reasons to reject Plaintiff's testimony: (1) conservative treatment; (2) lack of objective medical evidence; (3) inconsistencies between Plaintiff's testimony and conduct; (4) Drs. Enriquez's and Pollis's observations that Plaintiff's gait is unimpaired; and (5) consultative examining and state agency reviewing physicians' opinions that Plaintiff can do light work. As discussed below, the ALJ's reasons for discrediting Plaintiff's statements were based upon substantial evidence in the record and were clear and convincing.

First, the ALJ properly rejected Plaintiff's credibility because Plaintiff's treatment has been conservative. Evidence of conservative treatment is sufficient to discredit a claimant's testimony regarding the severity of an impairment. <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007) (citing <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995)).

The ALJ found that Plaintiff is not a surgical candidate and received no medical treatment in 2014, despite filing his application in May 2013 and claiming that his condition worsened after filing. (AR 32-33, 170). While Plaintiff explained that he failed to seek treatment in 2014 because his worker's compensation coverage was terminated (AR 51), the ALJ noted that Plaintiff's medical "records show[] that his condition is responsive to treatment." (AR 33). In addition, the ALJ reasoned that Dr. Lavi's records show only conservative management after his second surgery in 2010, including trigger point injections with symptom relief. (AR 34). The ALJ also took note that Plaintiff admitted to taking no prescribed medications for pain and using only over-the counter Tylenol. (AR 33).

Substantial evidence in the record supports the ALJ's conclusion that Plaintiff received conservative, effective treatment. From this evidence, the ALJ properly could infer that Plaintiff's pain was exaggerated and not completely disabling. Cf. Tommasetti, 533 F.3d at 1040 (favorable response to conservative treatment, including medication, may undermine a claimant's assertions); Parra, 481 F.3d at 750-51 ("that [claimant's] physical ailments were treated with an over-the-counter pain medication" is "evidence of conservative treatment . . . sufficient to discount a claimant's credibility regarding severity of an impairment"). Accordingly, Plaintiff's conservative treatment was a clear and convincing reason to discount the credibility of his statements.

Second, while a lack of objective medical evidence may not serve as the sole reason for an adverse credibility determination, the ALJ properly relied on a lack of medical evidence as one of many reasons to discount Plaintiff's credibility. Cf. Rollins, 261 F.3d at 857 ("[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); see also 20 C.F.R. § 416.929(c)(2). The ALJ noted that Plaintiff's medical treatment has not confirmed that Plaintiff's condition is worsening "per objective evidence." (AR 32). Further, Plaintiff received no medical treatment at all in 2014 despite his claims of suffering from a worsening medical condition. (AR 33; see also AR 50-51). In addition, the ALJ indicated that Dr. Enriquez's September 2013 examination of Plaintiff's back revealed no signs of radiculopathy. (AR 33). Further, Dr. Berman's examination revealed only a "hint" of radiculopathy on the left in response to straight leg raising. (AR 34; see also AR 432).

This evidence was substantial and reasonably supported the ALJ's conclusion that Plaintiff's symptoms were not consistent with the objective medical evidence. Accordingly, the ALJ properly relied on a lack of objective medical evidence as one of several reasons to discount Plaintiff's credibility.

Third, the ALJ properly relied on Plaintiff's own conduct to impeach the credibility of his statements. The ALJ noted that

Plaintiff "is able to drive a car, which reasonably supports a retained ability to bend, twist, use the upper and lower extremities in a coordinated fashion and an ability to turn his neck." (AR 33). The ALJ further determined that Plaintiff's "testimony regarding the ability to lift or carry is undermined by his ability to exert a grip force up to 80 pounds with the bilateral extremities." (Id.)

Substantial evidence supported the ALJ's conclusion. Dr. Enriquez observed that Plaintiff drove himself to his appointment. (AR 245). He also reported that Plaintiff is able to generate 80 pounds of force using the right hand and 90 pounds of force using the left hand. (Id.). Similarly, Dr. Pollis measured Plaintiff's grip strength as 80/70/80 in both hands. (AR 667). Accordingly, the inconsistencies between Plaintiff's conduct and abilities and his claimed limitations constitutes a clear and convincing reason supporting the ALJ's adverse credibility determination. Cf. Light, 119 F.3d at 792; see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (ALJ properly "concluded that [claimant] was not entirely credible because he found contradictions between complaints in [plaintiff's] activity questionnaire and hearing testimony and some of his other self-reported activities.").

Fourth, the ALJ properly relied on the observations of Plaintiff's examining physicians to discount Plaintiff's credibility. The ALJ found that Plaintiff "walks effectively as noted by the consultative examining physicians." (AR 34). Further, the ALJ noted that Drs. Enriquez and Pollis failed to

observe any gait disturbances or upper or lower extremity weakness or loss of function. (AR 34).

Substantial evidence supported the ALJ's finding. Dr. Enriquez's notes indicate that Plaintiff's "[g]ait and balance are within normal limits" and Plaintiff does not require an assistive device for ambulation. (AR 247). Dr. Pollis similarly reported that Plaintiff's "gait is normal without signs of limp or antalgia." (AR 668). In addition, Dr. Pollis observed that Plaintiff is able to stand on his heels and toes without difficulty and there is no evidence of weakness in the angle flexors and extensors. (Id.). Further, he observed that Plaintiff had no difficulty getting on and off of the examination table, sat in a chair comfortably, is able to rise from a sitting and supine position, and requires no assistive devices to ambulate. (Id.).

Moreover, while Dr. Berman assessed a nine percent loss of function due to Plaintiff's weight-bearing limitation, he nonetheless noted that Plaintiff falls within a category of persons who can rise to a standing position and walk, but has difficulty with elevations, grade, stairs, deep chairs, and long distances. (AR 433). The ALJ reasonably interpreted this assessment of Plaintiff's weight-bearing capacity as consistent with the opinions of Drs. Pollis, Enriquez, and Limos. (AR 34). It is not the Court's task to second-guess the reasonable interpretation of an ALJ when, as here, it is supported by substantial evidence. Cf. Rollins, 261 F.3d at 857. Accordingly, the ALJ properly considered the observations of Plaintiff's examining physicians to discount

Plaintiff's credibility.  Cf. Smolen, 80 F.3d at 1284 (citing SSR 88-13).

Fifth, the ALJ properly discounted Plaintiff's credibility because consultative examiners Drs. Pollis and Enriquez and state agency reviewer Dr. Limos opined that Plaintiff was capable of performing a level of work consistent with Plaintiff's RFC.  (AR 33).  The ALJ also interpreted Dr. Berman's opinion as consistent with the other medical opinion evidence and Plaintiff's RFC.  (AR 33-34).

The opinions of these physicians constituted substantial evidence upon which the ALJ was entitled to rely to discount Plaintiff's credibility.  Cf. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008 ("the medical evidence, including Dr. Eather's report and Dr. Neville's report – which both found [claimant] could perform a limited range of work – support the ALJ's credibility determination"); Molina, 674 F.3d at 1113 (ALJ supported adverse credibility finding based on "conclusions of both Dr. Yost and the state examining physician that [claimant's] anxiety disorder was not severe and that she was able to control it with [medication] and other self-calming measures").  Dr. Enriquez opined that Plaintiff can occasionally lift or carry twenty pounds and frequently lift and/or carry ten pounds, stand and/or work with normal breaks for six hours in an eight-hour work day, sit with normal breaks for six hours in an eight-hour work day, and occasionally bend, stoop, and twist.  (AR 247).

Dr. Pollis similarly opined that Plaintiff is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six hours out of an eight-hour work day with appropriate breaks, and sitting six hours out of an eight-hour work day with appropriate breaks. (AR 670). Dr. Pollis noted the limitation of occasional bending, climbing, stooping, kneeling, and crouching. (AR 670-71). Dr. Limos's functional assessment was fully consistent with the assessments of Drs. Enriquez and Pollis. (AR 64).

Further, although Dr. Berman assessed Plaintiff with a 28 percent "whole person impairment" and an additional nine percent impairment due to Plaintiff's weight-bearing limitation, the ALJ reasonably determined that Dr. Berman's opinion nonetheless was consistent with the other medical opinions. The ALJ reasoned that, "given the claimant's pervious very heavy work activity," he would not be precluded from performing activities consistent with the assessed RFC even with the percentage impairment assessed by Dr. Berman. (AR 34). The Court does not second-guess this reasonable interpretation where it is supported by substantial evidence in the record. Cf. Rollins, 261 F.3d at 857.

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility finding. Accordingly, no remand is required.

//

//

//

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  June 12, 2017

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**